PJS:MJB:all

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SEBASTIAN RICHARDSON,** | : | CIVIL NO. 3:cv-11-2266 |
| Plaintiff | : | |
| | : | (Complaint Filed 12/7/11) |
| | : | |
| v. | : | |
| | : | (Nealon, J.) |
| **BRYAN A. BLEDSOE, et al.,** | : | |
| Defendants | : | Filed Electronically |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Defendants, Thomas R. Kane, Joseph Norwood, Bryan A. Bledsoe, A.W. David Young, A.W. Donald Hudson, Jr., Cpt. Bradley Trate, Deputy Cpt. Sean Snider, Lt. James Fleming, Lt. Pedro Carrasquillo, Lt. Chris Mattingly, Lt. Matthew Saylor, Lt. Aaron Sassaman, Lt. Jason Seeba, Lt. Roger Miller, Lt. Thomas Johnson, Lt. Camden Scampone, and Lt Kyle Whittaker, hereby submit this reply brief in support of Defendants' Motion to Dismiss or, in the Alternative, for a More Definite Statement. Defendants rely mostly on their initial brief, but make note of the following:

## I. Reply to Plaintiff's Factual Assertions

To demonstrate the failure to state a claim as to each Defendant, and to demonstrate how Plaintiff's amended complaint is deficient both legally and factually, Defendants have summarized the forty-five pages of factual allegations in the Amended Complaint against each defendant listed below. As shown below, most of the Amended Complaint names Defendants, generally and in conclusory fashion - no matter what position they hold in the BOP, or claim malfeasance by unnamed staff.

<u>Defendant Bryan A. Bledsoe</u>

Richardson alleged that Mr. Bledsoe, the former warden of the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), oversaw and implemented housing and recreation placement decisions and for approving restraints. Am. Compl. (Doc. No. 21) ¶ 9.

Richardson "believes" that Mr. Bledsoe was on the initial intake committee that assigns cellmates to inmates when they first arrive at USP Lewisburg. See id. ¶¶ 25-29.

Richardson alleged that Mr. Bledsoe authorized the use of ambulatory restrains and four-point restraints from February 3, 2011 to March 2, 2011, and May 17, 2011, to June 2, 2011. See id. ¶¶ 106-107, 169, 180.

Without explaining how he knew or why, Richardson claims Mr. Bledsoe knew that Richardson was kept in "excessively tight" restraints, and knew of the conditions of his cells in which Richardson was placed. See id. ¶ 181.

Defendant David Young

Richardson alleged that Mr. Young, an Associate Warden at USP Lewisburg, is responsible for custody and security, including cellmate and recreation cage placements and the use of restraints. See id. ¶ 10.

Richardson believes Mr. Young is on the alleged initial intake committee and he alleged that Mr. Young is responsible for determining which inmates may be housed or participate in activities together. See id. ¶¶ 25-30.

Richardson claims that he complained to Mr. Young about the use of restraints for refusing "dangerous cellmates" and his injuries from restraints. See id. ¶¶ 132.

Defendant Donald Hudson, Jr.

Richardson alleged that Mr. Hudson, an Associate Warden at USP Lewisburg, is responsible for custody and security, including cellmate and recreation cage placements and the use of restraints. See id. ¶ 11.

Richardson believes Mr. Hudson is on an initial intake committee and he alleged that Mr. Hudson is responsible for determining which inmates may be housed or participate in activities together. See id. ¶¶ 25-30

<u>Defendant Bradley Trate</u>

Richardson alleged that Mr. Trate, the Captain at USP Lewisburg, is responsible for custody and security, including cellmate and recreation cage placements and the use of restraints. <u>See id.</u> ¶ 12.

Richardson believes Captain Trate is on the alleged initial intake committee. <u>See id.</u> ¶¶ 25-29.

Richardson alleged that Captain Trate told Mr. Richardson at some unknown date that the only way out of restraints was to accept a cellmate that they chose for him. <u>See id.</u> ¶ 130. Richardson claims he offered to cell with inmates of Richardson's own choosing as a compromise. <u>See id.</u> 131.

<u>Defendant Sean Snider</u>

Richardson alleged that Mr. Snider, the Deputy Captain at USP Lewisburg, is responsible for custody and security, including cellmate and recreation cage placements and the use of restraints. <u>See id.</u> ¶ 130. Richardson claims he offered to cell with inmates of Richardson's own choosing as a compromise. <u>See id.</u> 131.

Richardson alleged that Deputy Captain Snider told Mr. Richardson at some unknown date that the only way out of restraints was to accept a cellmate that they chose for him. <u>See id.</u> ¶ 130.

<u>Defendants James Fleming, Pedro Carrasquillo, Chris Mattingly, Matthew Saylor, Aaron Sassaman, Jason Seeba, Roger Miller, Thomas Johnson, Camden Scampone, and Kyle Whittaker</u>

Richardson alleged that Lieutenants Fleming, Carrasquillo, Mattingly, Saylor, Sassaman, Seeba, Miller, Johnson, Scampone, and Whittaker, former and current Lieutenants at USP Lewisburg, are responsible for custody and security, including cellmate and recreation cage placements and the use of restraints. See id. ¶ 14.

Richardson alleges that on February 3, 2011, Lieutenant Fleming led a use of force team to Mr. Richardson's cell. See id. ¶ 99.

While in four-points between February 3, 2011, to March 2, 2011, but no mention of when, Lieutenant Scampone denied Richardson water and urinal. It is not clear, but Richardson seems to allege that because Scampone denied Richardson a urinal break, he soiled paper clothing. See id. ¶¶ 109-110. Richardson also alleges that Lieutenant Scampone opened a window in early February and Richardson suffered because of the cold air. See id. ¶¶ 111-112.

Lieutenants Fleming, Carrasquillo, Mattingly, Saylor, Sassaman, Seeba, Miller, Johnson allegedly routinely checked Richardson's restraints during this time period with medical staff. See id. ¶¶ 121-122. These lieutenants allegedly denied Richardson bathroom breaks during this time period and Richardson would soil his own clothing. See id. ¶¶ 122-123. In addition, these lieutenants refused to release

Richardson from restraints although he was allegedly in severe pain, not threatening harm, or taking other action justifying his restraints. See id. ¶¶ 124-26.

Richardson next claims the Lieutenants Saylor and Fleming led a use of force team on May 17, 2011, with the goal of placing Richardson in restraints. See id. ¶¶ 159.

At some point during his restraint placement between May 17, 2011, and June 2, 2011, Lieutenant Scampone allegedly twisted Richardson's cuffs tight causing him pain. See id. ¶ 162.

While in four points between May 31, 2011, and June 1, 2011, Lieutenant Johnson allegedly denied Richardson a bathroom break that caused him to soil his paper clothing. See ¶ 171. Also during this time, Richardson allegedly complained about pain to unnamed medical staff and Lieutenants Carrasquillo, Fleming, Johnson, Mattingly, Miller, Saylor, Scampone, Seeba, and Whitaker, who allegedly refused to loosen his restraints and take him out of the restraints. See id. ¶¶ 173-78. These lieutenants allegedly knew of "unsanitary and inhumane conditions" while Richardson was in restraints. See id. ¶ 179.

Defendant Joseph Norwood

The only particular allegation against Defendant Joseph Norwood was that he knew of the "restraint practices at USP Lewisburg" because he received regular reports by Lieutenants about the use of restraints. See id. ¶ 184.[1]

Defendants, generally

Richardson alleged that Defendants, without naming them individually, were aware that placing "hostile" inmates in a cell or recreation cage creates a substantial risk that the inmates will engage in violent behavior. See id. ¶ 35.[2] Richardson claims that Defendants brought these "hostile" inmates to other inmates' cells as proposed cellmates, and failed to change policies and practices of USP Lewisburg regarding cell and recreation assignments of "hostile" inmates. See id. ¶¶ 37, 43. He further alleges that when inmates refuse these "hostile" cellmates, Defendants punish the refusal with "punitive restraints." See id. ¶¶ 47, 59.

Richardson claims that Defendants ordered punitive restraints, which make it more difficult to drink water, go to the bathroom, and require inmates sleep on a

---

[1] In his class action allegations, Richardson claims that Defendants Kane, Norwood, Bledsoe, Young, and Hudson, created policy in BOP institutions and were aware of conditions at USP Lewisburg based on their positions and the prisoner grievance process. See id. ¶¶ 193-201.

[2] Richardson defines "hostile inmate," as an inmate who is a member of a rival gang, or an inmate who is known to be assaultive or "someone who has had a particular conflict with the proposed cellmate." See id. ¶ 32.

mattress on the floor and that floor is often liter with urine and feces, so inmates will cell with "hostile" inmates. See id. ¶¶ 64-82.

Richardson claims that Defendants knew that an inmate known as "the Prophet" had assaulted several people at USP Lewisburg. See id. ¶¶ 93-94. Richardson claims Defendants kept him in restraints from February 3, 2011, to March 2, 2011, in conditions amounting to torture because he would not accept a "hostile" cellmate. See id. ¶¶ 86, 138.

On February 23, 2011, Richards claims Defendants again tried to force Richardson in with a "dangerous cellmate assignment." See id. ¶116.

Richardson claims that sometime after March 2, 2011, Defendants brought a mentally ill inmate to Richardson's cell. See id. ¶¶ 142-44.

Richardson claims that when Defendants brought an inmate to his cell on May 17, 2011, he could no longer trust staff for his safety, so he refused all cell assignments. See id. ¶¶ 157-158.

Richardson claims that Defendants kept him in four-point restraints from May 31, 2011, until June 1, 2011. See id. ¶ 170.

Unnamed staff or correctional officers

Richardson alleges that unnamed staff brought "the Prophet" to his cell and asked him if he refused to be celled with him. Thereafter, more unnamed staff took him out of his cell and placed him in restraints that were uncomfortable. See id. ¶¶

95-103. More unnamed staff placed Richardson in four-point restraints that made him scream out in pain. See id. ¶ 108.

Richardson also claimed that unnamed medical staff refused to treat him for pain caused by the restraints and falsely documents there interactions with him. See id. ¶¶ 126-28. More unnamed medical staff also allegedly refused to provide one of Richardson's cellmates, who had a mental disorder, any medication. See id. ¶¶ 147-48.

## II. Reply Argument

The Third Circuit recently summarized what district court's must analyze when reviewing the sufficiency of a pleading. First, a court must outline the elements of each claim upon which a plaintiff seeks relief. Second, a court will discount any conclusory allegations that are not entitled to be assumed true. Third, a court must use its experience and common sense to determine if a plaintiff has asserted plausible factual allegations in which he may be entitled to some type of relief. See Bistrian v. Levi, No. 10-3629, 2012 WL 4335958, at *8 (M.D. Pa. Sept. 24, 2012) (quoting and citing Ashcroft v. Iqbal, 556 U.S. 662, 675, 679 (2009); Argueta v. ICE, 643 F.3d 60, 73 (3d Cir. 2011)).

As Defendants have previously outlined what Richardson must establish to demonstrate a claim under the Eighth Amendment, it will not do so again. Defendants, however do note that to state claim for deliberate indifference, an inmate

must allege facts that show that a prison official "knows that inmates face a <u>substantial</u> <u>risk</u> of <u>serious</u> <u>harm</u> and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).

The Court should discount or "peal away" the conclusory allegations of the Amended Complaint, which include all of the allegations against "Defendants," and the following:

*     Mr. Bledsoe knew that Richardson was kept in "excessively tight" restraints, and knew of the conditions of his cells in which Richardson was placed. <u>See</u> <u>id.</u> ¶ 181.

*     Lieutenants Carrasquillo, Fleming, Johnson, Mattingly, Miller, Saylor, Scampone, Seeba, and Whitaker knew of "unsanitary and inhumane conditions" while Richardson was in restraints. <u>See</u> <u>id.</u> ¶ 179.

*     Defendant Joseph Norwood knew of the "restraint practices at USP Lewisburg" because he received regular reports by Lieutenants about the use of restraints.

The Court should also not find plausible that all Defendants, which included the Director of the BOP, Warden, Associate Warden, Captains, Deputy Captain, and ten Captains as a group placed Richardson with dangerous cellmates, placed him in tight restraints, and then tortured him. It just not plausible that the Director and Warden et al. walked down to Richardson cell to demand he take cellmates, place

restraints on him, and then torture him. To the extent, Richardson has not named a particular Defendants as the violator of his rights, this Court should not give credence to those allegations.

As to his general allegations, Richardson has not stated a claim. First, when an inmate claims that he does not want to be celled with a "dangerous" or "hostile" inmate, prison officials have an "arduous task." See Bistrian, 2012 WL 4335958, at *12 (citing Young v. Quinlan, 960 F.2d 351, 363 n. 23 (3d Cir. 1992)). "'Prisoners may feign their fear of physical harm simply to manipulate a transfer,' in the hope for example, of obtaining more desirable living arrangements." Id. (citing Young, 960 F.2d at 363 n. 23) (quotation marks omitted in original). Richardson allegation that he requested a different cellmate, like the "I'm-in-trouble" entreaty described in Bistrian, does not support a finding that any Defendant knew that Richardson faced substantial risk of serious harm. See  See Farmer v. Brennan, 511 U.S. at 847. Rather, the allegations make clear that Richardson wanted to manipulate his situation to pick the cellmate that he wanted – or he argues the inmates should run the asylum and pick their own cellmates. See Am. Compl. ¶ 131.[3]

---

[3]Indeed, he notes one of the cellmates he refused was not "dangerous," he just did not trust the staff. That outrageous type of action by Richardson jeopardizes staff and other inmates in the prison when staff have to go into a use of force team to enter a cell of an inmate who is disobeying prison officials.

Moreover, no court has ever held that prisoner officials may not cell inmates together who is a member of a rival gang, or an inmate who is known to be assaultive or "someone who has had a particular conflict with the proposed cellmate." Thus, Richardson has not alleged a clearly established right, and Defendants enjoy qualified immunity. See Saucier v. Katz, 533 U.S. 194, 200-02

As to the restraint themselves; first, Richardson acknowledges that he refused staff orders to cell with inmates. Second, Richardson acknowledges that he had the power to release himself from the restraints by simply agreeing to comply with the orders to accept the new cellmates. Third, whether this is an excessive force case or deliberate indifference case, any Defendant can rely on medical staff – who were not named as defendants or named at all for that matter - to assume that the restraints were not causing Richardson's alleged injuries. See Ayala v. Terhune, 195 F. App'x 87, 91 (3d Cir. 2006) (affirming district court dismissal of claim that prison officials did not adequately respond to prison grievances regarding medical care where the plaintiff was under the care of physician) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)).

Finally, Richardson has not alleged a clearly established right. There is no authority that staff cannot place inmates in restraints for periods of time when the inmate has refused orders. In addition, there is no authority that inmates must have requested bathroom breaks. Staff may use their discretion, based on their experience

when an inmate should be allowed to use the bathroom, especially in light of the fact that they are in four-point restrains for their violent behavior and because they must consider their own safety as well as the other inmates.

As to the procedural due process claims that Richardson now claims, it is not clearly established that Defendants must provide a way for inmates to contest cell assignments or the use of restraints, prior to the use of restraints. Court have routinely held the prison grievance process provides inmates with due process; and Richardson, as he has exhausted his remedies, has used that process, and thus has been given due process.

## III. Conclusion

For the above-stated reasons and noted in Defendants' initial brief, this Court should dismiss the Amended Complaint, or alternatively, require Plaintiff to file a more definite statement of his claims.

                Respectfully submitted,

                PETER J. SMITH
                United States Attorney

                /s Michael Butler
                Michael Butler
                Assistant United States Attorney
                Attorney I.D. No. PA81799
                Anita L. Lightner
                Paralegal Specialist
                228 Walnut Street, 2nd Floor
                P.O. Box 11754
                Harrisburg, PA 17108-1754
                Tel: (717)221-4482
                Fax: (717)221-2246
                Michael.J.Butler@usdoj.gov

Date: October 9, 2012

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEBASTIAN RICHARDSON, | : | CIVIL NO. 3:cv-11-2266 |
| Plaintiff | : | |
| | : | (Complaint Filed 12/7/11) |
| v. | : | |
| | : | (Nealon, J.) |
| BRYAN A. BLEDSOE, et al., | : | |
| Defendants | : | Filed Electronically |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on August 27, 2012, she served a copy of the attached

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

via the Court's Electronic Case Filing System ("ECF") and that the Addressee(s) listed below are filing users under the ECF system. Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case. Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document, and no additional service upon the filing user is required.

Addressee(s):

Jennifer J. Tobin
jtobin@pailp.org

Francis Dermody
francis.dermody@dechert.com

/s Michelle E. Lincalis
Michelle E. Lincalis
Paralegal Specialist