# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEBASTIAN RICHARDSON, | : | Civil No. 3:11-CV-02266 |
| Plaintiff, | : | |
| v. | : | |
| BRYAN A. BLEDSOE, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Plaintiff's motion for class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. (Doc. 164.) This action was brought on behalf of the individual Plaintiff, Sebastian Richardson, and a putative class comprised of all current and future prisoners in the Special Management Unit ("SMU") at the United States Penitentiary at Lewisburg ("USP Lewisburg") for alleged unconstitutional conditions of confinement in violation of the Fifth and Eighth Amendments to the United States Constitution. (Doc. 21, p. 2.)[1] Richardson is a former SMU inmate at USP Lewisburg seeking compensatory and punitive damages on behalf of himself, and injunctive and declaratory relief on behalf of the putative class. Since this case comes before the court on a motion for class certification, Richardson's individual claims are not presently before the

---

[1] For ease of reference, the court utilizes the page number from the CM/ECF header.

court.[2] Thus, the court focuses its attention on the putative class's claims for declaratory or injunctive relief. One element of this case is fatal to the class's success under Rule 23(b)(2): Defendants[3] have asserted that the SMU program has been moved from USP Lewisburg to the United States Penitentiary at Thomson, Illinois ("USP Thomson"), and no longer exists at USP Lewisburg. Because the court finds that the discontinuance of the SMU program at USP Lewisburg forecloses the court's ability to grant the relief sought for the putative class's claims under Rule 23(b)(2), the court will deny the motion for class certification. (Doc. 164.)

## FACTUAL BACKGROUND

The SMU program was created to house inmates presenting "unique security and management concerns," namely individuals with histories of violence or individuals who "participated in or had a leadership role in geographical group/gang-related activity." (Doc. 21, p. 6 (citing U.S. Dep't of Justice, Program

---

[2] The court notes that nothing in this memorandum prevents Richardson from seeking relief for past constitutional violations that allegedly occurred which he was housed at USP Lewisburg in his individual capacity.

[3] Defendants in this case include Thomas Kane, acting director of the Bureau of Prisons ("BOP"); Joseph Norwood, Regional Director of the Northeast Region for the BOP; Bryan Bledsoe, the Warden of USP Lewisburg; David Young and Donald Hudson, Jr., Associate Wardens at USP Lewisburg; Bradley Trate, a Captain at USP Lewisburg; Sean Snider, a Deputy Captain at USP Lewisburg; and Camden Scampone, James Fleming, Pedro Carrasquillo, Matthew Saylor, Chris Mattingly, Aaron Sassaman, Jason Seeba, Roger Miller, Thomas Johnson, and Kyle Whittaker, Lieutenants at USP Lewisburg. (Doc. 21, pp. 5–6.)

Statement: Special Management Units, P5217.01, § 1 (Nov. 19, 2008)).  At the time Richardson filed his amended complaint, he was housed in the SMU program at USP Lewisburg.  (*Id.* at 4.)  Richardson alleges that as part of this program, Defendants intentionally attempted to pair hostile inmates as cellmates who would spend upwards of 20 hours per day together.  (*Id.* at 7, 10.)  He further asserts that inmates who refuse a cellmate to avoid potential confrontation or violence are placed in punitive restraints.  (*Id.* at 12.)  According to Richardson, these restraints are retaliatory in nature and are "applied and maintained in an excessively tight manner, causing severe pain, numbness, swollen wrists and fingers, open wounds, breathing problems[,] and possibly nerve damage[,]" and can interfere with simple functions of human activity, such as eating, drinking, and basic hygiene.  (*Id.* at 15–17.)  Richardson claims that inmates are often kept in these restraints for extended periods of time, and are released once they agree to accept a potentially dangerous cellmate.  (*Id.* at 15, 24–25, 35.)

On the basis of these allegations, Richardson seeks to bring a class action on behalf of himself and a class of similarly situated individuals "who are currently or will be imprisoned in the SMU program at USP Lewisburg."  (*Id.* at 32–33.)  Richardson asserts violations on a class-wide basis of the Fifth and Eighth Amendments to the United States Constitution and seeks injunctive and declaratory relief.  (*Id.* at 41–44.)

## PROCEDURAL HISTORY

The procedural history of this case is lengthy and complex. Indeed, Richardson filed the operative amended complaint in this case on July 27, 2012. (Doc. 21.) Since that time, this case has been assigned to five different judges. This case was assigned to the undersigned on November 25, 2019.

On August 13, 2012, Defendants filed a motion to dismiss or for a more definite statement seeking, in pertinent part, dismissal of Richardson's class claims for failure to make the requisite showing to maintain a class action under Rule 23. (Doc. 24; Doc. 28, p. 26.) On April 9, 2013, the court denied class certification on the basis that Richardson's putative class would be unmanageable. (Doc. 38.) This ruling did not, however, prevent Richardson from pursuing his individual claims against Defendants. Thus, Richardson continued to litigate his individual claims until October 8, 2014, at which time the court stayed this case in its entirety pending the Court of Appeals for the Third Circuit's resolution of *Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015), a similar case arising out of the SMU program at USP Lewisburg. (Doc. 54.) Once *Shelton* was decided, Richardson sought leave to appeal the court's April 9, 2013 dismissal of his class certification claims, and leave was granted to appeal on July 30, 2014. (Doc. 55.)

On appeal, the Third Circuit reversed the dismissal and remanded the case, finding that:

> First, Richardson did not have a "fair opportunity" to seek class certification before his individual claim became moot because Defendants transferred Richardson out of the SMU Program six weeks after he filed his amended class action complaint. In other words, he could not be expected to have presented the class certification issue to the District Court within that amount of time. Second, because the class certification question was both raised by Defendants and responded to by Richardson within seven weeks of the filing of the amended class complaint, we excuse Richardson's failure to file a motion for class certification as the issue was squarely presented to the District Court without undue delay. Accordingly, under *Weiss* [*v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004)], we can relate the District Court's denial of class certification back to the date of Richardson's amended class complaint. Because Richardson's individual claims for injunctive relief were live at the time he filed this complaint, the subsequent mooting of these claims does not prevent Richardson from continuing to seek class certification or from serving as the class representative.

*Richardson v. Dir. Fed. Bureau of Prisons*, 829 F.3d 273, 289–90 (3d Cir. 2016).[4]

The mandate from the Third Circuit was entered on September 6, 2016, and the stay was lifted on November 1, 2016. (Docs. 61, 62.) Richardson filed his first motion to certify the class on January 27, 2017, but did not introduce any factual evidence in support of his motion. (Doc. 68.) The court denied this initial motion on October 17, 2017, noting that the court was "unable to make the factual findings necessary to grant it[,]" but denied the motion without prejudice, and explicitly granted Richardson leave to refile his motion for class certification within a reasonable time after discovery concluded. (Doc. 98.) On October 22, 2019, after

---

[4] The court notes that the Third Circuit's prior decision in this case has no bearing on the issues presently before the court.

5

engaging in discovery and receiving a number of extensions of time, Richardson filed the instant motion to certify the class, attaching a voluminous discovery record in support thereof. (Doc. 164.)

In the interim between Richardson's first and second motions seeking class certification, on June 8, 2018, the federal Bureau of Prisons ("BOP") publicly announced its decision to transfer the SMU program from USP Lewisburg to USP Thomson. (Doc. 182-1, p. 2); *see Mission for AUSP Thomson Announced*, FED. BUREAU OF PRISONS, https://www.bop.gov/resources/news/20180606_tom_mission.jsp#:~:text=The%20Bureau%20is%20moving%20the,)%20Lewisburg%2C%20to%20AUSP%20Thomson. (last accessed November 23, 2020); *see also SMU Moving to AUSP Thomson*, DC CORR. INFO. COUNCIL, https://cic.dc.gov/release/smu-moving-ausp-thomson (last accessed November 23, 2020). As part of this process, inmates previously housed in the SMU program at USP Lewisburg were transferred to USP Thomson and inmates designated for the SMU program are no longer being sent to USP Lewisburg. (Doc. 182-1, p. 2.) According to Defendants, the transition was fully executed by January 7, 2019, with only 11 inmates remaining in the SMU at USP Lewisburg as of January 15, 2020, two of whom were awaiting transfer to other institutions. (*Id.* at 2, 19.)

6

On December 2, 2019, and January 15, 2020, Defendants filed briefs in opposition to Richardson's motion for class certification, asserting that the closure of the SMU program at USP Lewisburg has mooted the class's claims.[5] (Docs. 173, 182.) Richardson timely filed a reply brief. (Doc. 184.) Thus, the motion for class certification is now ripe for review.

## JURISDICTION

Federal courts are courts of limited jurisdiction, whose jurisdiction only reaches actual cases and controversies. Therefore, it is always necessary to consider the threshold question of whether a dispute constitutes a case or controversy over which federal courts may exercise jurisdiction pursuant to Article III of the United States Constitution. As the Third Circuit has aptly summarized,

> Article III, section 2 of the United States Constitution limits federal jurisdiction to actual "cases" and "controversies." U.S. Const. art. III, § 2. It was intended to ensure that federal courts decide only those disputes of "a Judiciary nature," M. Ferrand, 2 Records of the Federal Convention of 1787, at 430 (1911), and stands as a direct prohibition on the issuance of advisory opinions, *Flast v. Cohen*, 392 U.S. 83, 96 (1968).
>
> To satisfy Article III's "case or controversy" requirement, an action must present "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution." *International Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir.

---

[5] The court notes that Defendant Seeba is represented by separate counsel and filed his own opposition brief, but also joins in the opposition brief filed by the remaining Defendants to the extent that their brief raises additional issues not discussed in Defendant Seeba's brief.

7

> 1987); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05 (1983). The case or controversy requirement must be met regardless of the type of relief sought, including declaratory relief. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

*Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992).

In addition, to maintain a suit in federal court, a petitioner "must have standing at all stages of the litigation, and they bear the burden of proving it 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Pub. Interest Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) (citing *NOW v. Scheidler*, 510 U.S. 249 (1994); quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Courts have enforced these requirements "through the several justiciability doctrines that cluster about Article III, including standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (internal quotation marks omitted)).

The justiciability doctrine at issue in this case is mootness. The mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit and is concerned with the court's ability to grant effective relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d

469, 476 (3d Cir. 2016); *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (citations and internal quotation marks omitted)).  A case may become moot if "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief."  *Id.* at 335 (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996) (internal quotation marks omitted)).  Defendants assert that the SMU closure at USP Lewisburg is one such development in this litigation that eliminates the court's ability to grant relief and accordingly deprives the court of jurisdiction to hear the class claims.

Defendants' mootness argument would likely prevail if Richardson sought injunctive and declaratory relief solely on his own behalf, "[b]ut class claims can breathe life into an otherwise moot case."  *Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 305 (3d Cir. 2016).  This is because the mootness doctrine has a number of exceptions, one of which is implicated where the case is a properly certified class action.  *Hamilton*, 862 F.3d at 335 (quoting *Chong v. Dist. Dir. INS*, 264 F.3d 378, 384 (3d Cir. 2001)).  As the Third Circuit has explained:

> As relevant here, so long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion.  *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000); *see also* [*United States Parole Comm'n v. Geraghty*, 445 U.S. 338, 397 (1980)].  This is because a plaintiff's claim that he should represent the class is one that is "presented . . . in a concrete factual

9

> setting and [with] self-interested parties vigorously advocating opposing positions," and such a claim "remains as a concrete, sharply presented issue" even if the plaintiff's individual claims expire. *Geraghty*, 445 U.S. at 403–04. For the same reason, the named plaintiff may appeal the denial of a motion to certify the class, *id.* at 404, as long as he "had a live claim when he filed for class certification" and "appellate review may reverse an erroneous denial of class certification that, 'if correctly decided, would have prevented the action from becoming moot,'" *Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (3d Cir. 1992) (quoting *Geraghty*, 445 U.S. at 404 n.11), because "the corrected ruling 'relates back' to the date of the original denial," *Geraghty*, 445 U.S. at 404 n.11. <u>Thus, the critical question is whether a plaintiff had a live claim at the time the operative motion to certify was filed</u>.

*Gayle*, 838 F.3d at 305–06 (emphasis added).

In cases such as this where multiple motions to certify the class have been filed, the Third Circuit has ruled that "*Geraghty*'s relation-back doctrine encompasses successive, substantially similar motions to certify unless and until certification has finally been resolved on Rule 23 grounds." *Id.* at 307 (quoting *Lusardi*, 975 F.2d at 976 (emphasis added)). Thus, relation back cannot "relate back into a void[,]" and such successive motions must be "substantially similar" to each other for the doctrine to apply. *Id.* (quoting *Lusardi*, 975 F.2d at 978 (internal quotation marks omitted)). To this end, where a motion is "denied solely so that further discovery could be completed 'without prejudice pending an expanded record and/or discovery[,]'" successive motions are substantially similar and do not constitute a denial of class certification based on a Rule 23 analysis to "break the jurisdictional chain." *Id.* In other words, the court possesses jurisdiction for the

10

limited purpose of making a definitive ruling on the class certification motion. *Id.* at 307–08.

Here, Richardson's first motion to certify the class, Doc. 68, was filed on January 27, 2017, at a time when the declaratory or injunctive relief sought could still be granted by the court because the SMU program had not yet been transferred from USP Lewisburg. This motion was denied by the court "not as a final adjudication of certification, but with express instruction that [Richardson] refile a motion to certify a class," *Gayle*, 838 F.3d at 307, once discovery had been completed. (Doc. 98, p. 3 (denying the motion for class certification without prejudice and granting Richardson "leave to re-file his Motion for Class Certification within a reasonable time after discovery is complete")). Before Richardson filed his second motion to certify the class, the BOP publicly announced its decision to transfer the SMU program from USP Lewisburg to USP Thomson. (Doc. 182-1, p. 2); *see Mission for AUSP Thomson Announced*, FED. BUREAU OF PRISONS, https://www.bop.gov/resources/news/20180606_tom_mission.jsp#:~:text=The%20Bureau%20is%20moving%20the,)%20Lewisburg%2C%20to%20AUSP%20Thomson. (last accessed November 23, 2020); *see also SMU Moving to AUSP Thomson*, DC CORR. INFO. COUNCIL, https://cic.dc.gov/release/smu-moving-ausp-thomson (last accessed November 23, 2020). Additionally, by the time Richardson filed his

second motion for class certification in October 2019, the BOP had transferred all but 11 of its SMU inmates to the new SMU program at USP Thomson.  (Doc. 182-1, pp. 2, 18–19.)  Thus, the court is presented with precisely the circumstance in *Gayle* where an intervening event between Richardson's successive motions for certification renders the class claims moot, but where a Rule 23 motion for class certification has not yet been finally resolved despite presenting a live case or controversy at the time the motion was initially filed.  Accordingly, the court finds that application of the relation-back doctrine is appropriate in this case.  As a result, the court has jurisdiction for the limited purpose of making a definitive ruling on the class certification motion.[6]

## STANDARD OF REVIEW

Every putative class action brought in federal court must satisfy the requirements of Federal Rule of Civil Procedure 23(a).  *Gonzalez v. Owens Corning*, 885 F.3d 186, 192 (3d Cir. 2018) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).  These requirements mandate that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

---

[6] The court notes the academic nature of this exercise since the mootness issue -- which would deprive the court of jurisdiction in this case absent motion to certify a class -- causes the class to fail under the Rule 23(b)(2) standard based on the court's inability to grant the requested relief. The court notes this observation, but proceeds with the analysis as required by binding precedent.

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In other words, a putative class must meet the elements of numerosity, commonality, typicality, and adequacy. *Gonzalez*, 885 F.3d at 192. "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.* Thus, certification is proper only where "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (quotation marks omitted)).

In addition to satisfying the Rule 23(a) requirements, a putative class must also fit within one of the categories of class actions enumerated in Rule 23(b). Fed. R. Civ. P. 23(b). In this case, Richardson has defined the putative class as a Rule 23(b)(2) class, which is a category "designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998) (quoting 1 Newberg on Class Actions § 4.11, at 439). As the Third Circuit has instructed:

> "[t]he key to the (b)(2) class is the "indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" [*Wal-Mart Stores, Inc. v. Dukes*, 564

13

> U.S. 338, 360 (2011)] (emphasis added) . . . . Because there is no right to opt out from such a class, and because significant individual issues in a (b)(2) class might present manageability issues and undermine the value of utilizing the class action mechanism, we have instructed that such classes must be cohesive. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).

*Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015).

## DISCUSSION

In this case, Defendants assert that Richardson's class claims are not entitled to certification under Rule 23(b)(2) because the BOP's decision to move the SMU program to USP Thomson forecloses the court's ability to grant the requested relief. (Doc. 182, pp. 19–23.) In other words, Defendants argue that the court cannot enjoin them from operating the SMU program at USP Lewisburg in an allegedly unconstitutional manner because the SMU program is no longer operational at USP Lewisburg. The court agrees.[7]

It is well-established that when "developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak*, 77 F.3d at 698–99. The development in this case which prevents the court from granting the requested relief is the BOP's decision to move the SMU program from USP Lewisburg to

---

[7] The court notes that the parties also provided briefing on the Rule 23(a) factors in this case. However, in light of the court's conclusion that Richardson has failed to meet the elements of Rule 23(b)(2), the court need not address these arguments pertaining to Rule 23(a).

14

USP Thomson. Thus, the class has already received the relief it seeks—a cessation of the allegedly unconstitutional practices in the SMU program at USP Lewisburg. Because the court can no longer grant the requested relief, the putative class fails to meet the requirements of Rule 23(b)(2)—that final injunctive relief or corresponding declaratory relief would be appropriate respecting the class as a whole. The court cannot make this determination here. Since both declaratory judgment and injunctive relief are necessarily forward-looking remedies, and because there is no future for the SMU program at USP Lewisburg, the class has necessarily received the relief it sought, and the court cannot grant any further relief.

Richardson counters that the voluntary cessation doctrine, an exception to the mootness doctrine, should allow the court to certify the putative class. (Doc. 184, pp. 9–17.) Under the voluntary cessation doctrine, a case is not necessarily moot merely because of a defendant's voluntary choice to end an unlawful practice. *United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004). Rather, a defendant's voluntary cessation of allegedly unlawful conduct will only moot a case "if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist., No. 1*, 551 U.S. 701, 719 (2007)).

When reviewing whether a defendant's voluntary cessation of an allegedly unlawful activity effectively moots a claim, "the defendant's reason for changing its behavior is often probative of whether it is likely to change its behavior again." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020). Courts should be "skeptical" of a voluntary cessation that is done only "in the face of a court order." *Id.* (citing *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)). "On the other hand, if the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger." *Id.* at 307 (citing *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007)).

The court finds that the voluntary cessation doctrine does not apply in this instance to save Richardson's class claims from mootness. The BOP has indicated its intent to close the SMU program at USP Lewisburg and transfer these inmates to USP Thomson. *See Mission for AUSP Thomson Announced*, FED. BUREAU OF PRISONS, https://www.bop.gov/resources/news/20180606_tom_mission.jsp#:~:text=The%20Bureau%20is%20moving%20the,)%20Lewisburg%2C%20to%20AUSP%20Thomson. (last accessed November 23, 2020). The court notes that "it is generally not the role of the courts to second-guess the reasons behind prison administrators' decisions." *McDonald v. Thomas*, No. 1:13-cv-01471, 2015 U.S. Dist. LEXIS

16

113053, at *16 (M.D. Pa. Jul. 28, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 112132 (Aug. 25, 2015).  Moreover, the court has no evidence that the SMU program will return to USP Lewisburg in the near future.  USP Lewisburg's inmate population data supports this conclusion, indicating that, as of January 15, 2020, only 11 inmates remained in the SMU program, two of whom were slated for transfer to other institutions.[8]  (Doc. 182-1, pp. 2, 19.)

Richardson appears to argue that the population at USP Lewisburg increased shortly after the SMU program was transferred to USP Thomson, and that this increase should give rise to a concern that the SMU program has not left USP Lewisburg.  (Doc. 184, p. 16; Doc. 184-2, p. 2.)  However, Richardson fails to distinguish between the total inmate population at the USP versus the inmate population specifically in the SMU program.  Indeed, the population report produced by Defendants from January 15, 2020 indicates that USP Lewisburg maintains at least four categories of inmates within its overall population at the USP.  (Doc. 182-1, p. 19.)  Richardson has produced no evidence to show that the population increase at USP Lewisburg was attributable to a resurgence in the inmate population in the SMU program.  Thus, the court finds that the voluntary cessation doctrine is not applicable in this case, that the court cannot grant the

---

[8] The court notes that this figure represents a dramatic decrease in the number of inmates housed within USP Lewisburg's SMU program since the record reflects that, at times, this program housed upwards of 1,100 inmates.  (Doc. 166-33, pp. 50, 71; Doc. 182-1, pp. 405–06.)

requested relief, and that Richardson's class claims are moot. Accordingly, Richardson's motion for class certification pursuant to Rule 23(b)(2) will be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification will be denied. (Doc. 164.) An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: November 24, 2020